IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-03 Erie |
| | ) | |
| ADAM GREGORY RYZINSKI | ) | |

**SENTENCING MEMORANDUM**
**OF THE UNITED STATES**

Ryzinski received and possessed tens of thousands of items of child sexual abuse material, much of it depicting young children.  His performance on pretrial release was terrible resulting in his detention.  He has serious drug and alcohol issues coupled with long standing mental health issues he has failed to address.  Ryzinksi should receive a guideline range sentence.  There is little reason to think he will follow the law in the future and his obvious sexual interest in young children makes him a danger to the community.

**Factual Background**

On November 21, 2017, the Pennsylvania State Police (PSP) identified a computer with IP address 24.165.148.248 which was sharing child sexual abuse material on the BitTorrent network. On November 21, 2017, PSP was able to download approximately 107 files directly from the computer with IP address 24.165.148.248.  The 107 files consisted of fully and partially downloaded files which most, if not all, contained file names consistent with child sexual abuse material.  Additionally, on November 22, November 27, and December 6, 2017, PSP was able to download approximately 140 files directly from the computer with IP address 24.165.148.248. The additional 140 files downloaded consisted of fully and partially downloaded files which

contained file names consistent with child sexual abuse material. The matter was then referred for further investigation to the FBI who reviewed the 247 files downloaded from IP address 24.165.148.248 and determined that most of the fully downloaded files contained child sexual abuse material. Three of the fully downloaded files viewed by the FBI are further described as follows:

    a)    **(Pthc) 6Yo Babyj – Bedtime Rape.mpg**: An approximately one minute 5 second video depicting a nude prepubescent girl receiving oral sex from an adult male. Later in the video the adult male digitally penetrates the girl. The video ends with the adult male rubbing his penis on the girl's vaginal area and ejaculating.

    b)    **Vicky String Bikini Pthc 11 Yo Pedofilia.mpg:** An approximately 3 minute 23 second video depicting a nude prepubescent girl bound with rope in standing and laying positions. An adult male rubs the breast and vaginal area of the bound girl. Later in the video, the adult male places his penis in the girl's mouth and she performs oral sex on the adult male.

    c)    **New ! (Pthc)(Kinderkutje) 8-10Yo Nata-Cd_1_3.mpg:** An approximately 5 minute 15 second video depicting a prepubescent girl on a bed and wearing only a white tank top. An adult male places his erect penis into her mouth and receives oral sex. The adult male then penetrates the girl's vagina with his erect penis. The adult male then ejaculates onto the girl's face.

The FBI then determined that IP address 24.165.148.248 was assigned to and administered by Charter Communications. On January 5, 2018, an FBI administrative subpoena was served on Charter Communications requesting subscriber information for IP address 24.165.148.248. On January 8, 2018, Time Warner Cable responded to the subpoena by providing information indicating that IP address 24.165.148.248, on November 21, November 22, November 27, and December 6, 2017, when the files containing the child sexual abuse content were downloaded by PSP, was assigned to Adam Ryzinski living in the City of Erie.

Based upon this information the FBI obtained a federal search warrant for Ryzinski's

residence. The FBI executed the warrant on January 23, 2018 and seized Ryzinski's computer equipment. Ryzinski was interviewed at his place of employment while the warrant was being executed at his residence. During that interview, Ryzinski admitted that he used BitTorrent to download and search for child sexual abuse material. He indicated that he started viewing and obtaining child sexual abuse material a few years prior to the interview when he was looking for "edgy" stuff. From there his interest grew and he acknowledged that his preferred age range was girls between the ages of 14 and 16. Ryzinski revealed the search terms he used to find illegal material included PTHC (Ryzinski stated that he knew that stood for preteen hard core), 14YO, 15YO, 16YO, teen voyeur and Siberian Mouse. Ryzinski also admitted to masturbating when he viewed his collection of child sexual abuse material.

Ryzinski further revealed that, among other items, he used his silver laptop computer to download child sexual abuse material. Ryzinski explained that his laptop computer was not at his residence and that it was currently at his girlfriend, J.B.'s house in Albion, Pennsylvania.

The FBI then contacted J.B. who agreed to meet with the FBI at her residence later that day. The FBI later met with and interviewed J.B. at her residence. J.B. stated that Ryzinski had stayed at her residence overnight on January 22, 2018 and had brought his laptop computer to watch movies. J.B. did not know Ryzinski had left the computer at her residence and denied any involvement in or knowledge of computers containing child sexual abuse material. J.B. voluntarily provided Ryzinski's silver HP laptop computer to the investigating agents. The FBI then obtained a search warrant for this computer. A forensic examination of the laptop and the other digital devices obtained from Ryzinski's residence revealed the presence of tens of thousands of items of child sexual abuse material much of which depicted prepubescent minors, some as young as infants and toddlers, engaged in sexually explicit conduct.

**Argument**

   A. **Legal Context**

Numerous courts have emphatically expressed the wretched consequences of child sexual abuse material. In *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007), the Third Circuit noted:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child [sexual abuse material.] These small victims may rank as "no one else" in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing "casual" or theoretical about the scars they will bear from being abused for Goff's advantage.

The defendant in *United States v. MacEwan*, 445 F.3d 237, 249-50 (3rd Cir. 2006), tried to downplay his receipt of child sexual abuse material by claiming that he was not a violent offender or a trafficker of guns or drugs. The Third Circuit was not persuaded, reasoning:

> Congress found that "where children are used in its production, child [sexual abuse material] permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child [sexual abuse material], because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Furthermore, "it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation of and distribution of child [sexual abuse material] and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials."

*Id*. (citations omitted); *See United States v. Gonzalez*, 445 F.3d 815 (5th Cir. 2006); *United States v. Duhon*, 440 F.3d 711, 718-20 (5th Cir. 2006); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

The district court in *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio,

4

2010), *aff'd* 669 F.3d 723 (6th Cir. 2012), imposed a guideline sentence on a child sexual abuse material defendant. In denying the defendant's challenge to the legitimacy of the child sexual abuse material guideline, the court reasoned:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child [sexual abuse material], we are living in a country that is losing its soul.
>
> Child [sexual abuse material] is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child [sexual abuse material] undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

### B. Sentencing Protocol

It is well settled that district courts "must perform three steps in determining the appropriate sentence to impose on a defendant." *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008). First, "a district court must begin the process by correctly calculating the applicable Guidelines range." *Id. (*citing *United States v. Gall*, 128 S.Ct. 586, 596 (2007); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006)). Second, the court must "formally rule on the motions of both parties and state on the record whether [it is] granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id. (*citing *Gunter*, 462 F.3d at 237). Third, "after giving both sides the chance to argue for the sentences they deem appropriate, the court must exercise its discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose." *Wise*, 515 F.3d at 216-17 (citations omitted). Having set forth the well-established sentencing protocol, the United States will take each step in turn.

### C. Applicable Guideline Range

Both parties agree that the Sentencing Guidelines range applicable to Ryzinski is 188 to 235 months of incarceration to be followed by a term of supervised release of not less than five years to life.

### D. Departures

The United States is not seeking an upward departure. A sentence within the 188-to-235-month guideline is justified, reasonable, and appropriate in this case. Ryzinski is not expected to seek a downward departure based on any specific provision of the Sentencing Guidelines. Rather, Ryzinski is expected to be seeking an enormous downward variance.

Ryzinski may seek a downward variance based on the flimsy argument that the two-level enhancement for computer use is unjust because everyone uses a computer now to commit offenses involving child sexual abuse material. There is significant irony to Ryzinski's claim. The penalty was enacted to curb the explosion of child sexual abuse material on the Internet. The fact that Internet child sexual abuse material is so pernicious and ubiquitous is not a basis to reduce penalties. Indeed, there is no other area of criminal law where, when severe crime becomes more common, the penalties are reduced. If bank robberies suddenly increased exponentially no one would say bank robbery should get a lighter sentence. Quite the opposite would occur, bank robbers would surely get increased sentences to send a clear message to the community in an effort to curtail the increase.

This argument also ignores the purpose of the enhancement. Due to the wide dissemination and instantaneous transmission, computer-assisted trafficking of child sexual abuse material is extremely difficult for law enforcement officials to stop. *United States v. Lebovitz*, 401 F.3d 1263, 1271 (11th Cir. 2005) (quoting H.R.Rep. No. 104-90, at 3-4 (1995), as

reprinted in 1995 U.S.C.C.A.N. 759, 760-61). Thus, the enhancement for use of a computer aims at punishing a distinct harm beyond the mere possession of child sexual abuse material. *United States v. Tenuto*, 593 F.3d 695, 698-99 (7th Cir. 2010).  Moreover, it is well established that the use of a computer enhancement does not constitute impermissible double counting.  *United States v. Ziska*, 602 F. App'x 284, 289 (10th Cir. 2015).

Ryzinski may also take issue with the number of images enhancement claiming that it does not reflect current technology and the ease by which an offender can accumulate material. This objection hardly applies to Ryzinski who amassed tens of thousands of items of child sexual abuse material.  Indeed, it seems that he did little else beyond collect and view material showing children being brutalized.

### E.  Section 3553 Factors

When sentencing a defendant, the Court's reasoning must be guided by all the sentencing considerations set forth in 18 U.S.C. § 3553(a), not just those related to a defendant's background or the impact of the sentence on the defendant.  *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).  In pertinent part, these factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for -
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...
(5) any pertinent policy statement-
(A) issued by the Sentencing Commission ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to victims of the offense.

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant. Rather, a correct application of these factors to any case involves a balancing of all the factors, which include the guidelines, the defendant's criminal conduct and its impact upon the victims and not just a consideration of the defendant's background and history. A solitary focus on only the defendant is certainly not an appropriate way to apply the § 3553 factors to this case. A full consideration of the § 3553 factors calls for a sentence within the 188 to 235 month guideline range.

1. **Nature and Circumstances of the Offense**

Ryzinski was in possession of tens of thousands of images and videos of child sexual abuse material, which he obtained from the Internet using his computer. His horrid collection was not merely seventeen-year-olds modeling naked. No, his stash of depravity was rife with young children, toddlers, and infants, being raped and abused. These images and movies are so repulsive that only someone with a profound interest in them would hold them close and continue obtaining them.

When interviewed Ryzinski revealed that his preferred age range was girls between fourteen and sixteen years of age. He also admitted that he would masturbate to the material, confirming his keen sexual interest in young children. There is simply nothing mitigating about Ryzinski's conduct in this case.

2. **History and Characteristics of the Defendant**

Ryzinski's mental health and substance abuse history do not inspire confidence in his rehabilitation. If anything, these issues should cause the Court to have less confidence in Ryzinski' ability to be law abiding when released back into the community. His history of

mental instability is not mitigating. It renders him more of a danger to the community upon release. Ryzinski's performance on pretrial release was horrible, ultimately resulting in his detention. If he could not abide by the less than stringent requirements of pretrial release what hope is there that he will be law abiding in the future.

Ryzinski's college education put him in much better position than many who are sentenced in federal court. Unfortunately, he squandered his education with drugs and alcohol and as a result has minimal employment history. While Ryzinski's home life was not perfect, it was also clearly much better than many defendants. He had adults in his life who cared about him and tried to provide for him. There is simply nothing sufficiently mitigating in his background to justify a downward variance below the bottom of the guideline range. Rather, there is much in Ryzinski's past for the Court to be concerned about such that a guideline range sentence is fully justified here.

### 3. The Need for Sentence Imposed to Reflect the Seriousness of Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime, and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* The Supreme Court has long recognized that sexual abuse has devastating and long-lasting effects on children. *New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Indeed, four members of the Supreme Court deemed child rape to be so serious that death could be imposed as a punishment. *Kennedy v. Louisiana*, 554 U.S. 407, 447-70 (2008).

Ryzinski received and possessed child rape photos and movies for years with no sign of quitting when he was caught. A guideline sentence will reflect the gravity of such conduct.

### 4. Impact on the victims

Congress has plainly indicated that "[e]very instance of viewing images of child sexual abuse material represents a ...repetition of their abuse." 18 U.S.C. § 2251, (Historical and Statutory Notes: Child Sexual abuse material Prevention of 2006, Pub.L.No. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 587, 623 (2006)). The words of Congress and many courts are echoes of the victims themselves.

Ryzinski's child sexual abuse material collection included images of forty-six (46) known victims, two of whom, "Tara" and "Pia" are seeking restitution. It is obvious from Tara's victim impact statement the terrible toll she has suffered. She has great difficulty trusting anyone and is extremely uncomfortable being in public. These effects will likely last a lifetime. In her victim impact statement, Tara wrote the following:

> Every time someone views this trash, they are once again making me re-live the most horrific part of my childhood. I can never truly heal because the perpetrators and stalkers never allow me to do so. Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel safe and have a chance to heal/recover. As a teen, I now realize the extent of people looking at these and I'm concerned about their locations fearing that they will find me. These people need to be punished for taking away a major part of my childhood and sense of security.

Plainly, the negative consequences that Ryzinski will experience from his conviction pale in comparison to the everlasting and devastating impact on these most innocent victims. The consequences for Ryzinski were entirely foreseeable and of his own making. The victims

continue to suffer enormously when Ryzinski and his ilk entertain themselves with pictures of these young victims being raped.

Tara is seeking restitution relative to her still unreimbursed expenses of $18,136.40. Her documentation in support of her restitution request was attached to her victim impact statement. The United States suggests that the Court order Ryzinski to pay $3,000.

The prosecution also requests that the Court order Ryzinski to pay the $5,000 in restitution sought by "Pia" the victim in the Sweet White Sugar Series. Her request is another example of the devastation experienced by victims of these offenses.

Victims depicted in child sexual abuse material consistently indicate that the continuing dissemination and collection of their abuse imagery is much more disturbing to them than the underlying abuse ever was. There point is simple. The abuse ended at some point. The viewing and collection of the material memorializing their abuse never ends. Its continued consumption by depraved individuals like Ryzinski is a constant and unceasing reminder that they can never be fully free of those wishing to receive gratification from their victimization. Thus, the fact that Ryzinski may not be a hands-on offender is beside the point. He was not charged with hands on offenses and his eager participation in the culture of child devastation has a life-long suffocating impact on the victims.

### 5. The Need for the Sentence Imposed to Afford Adequate Deterrence

#### a. General Deterrence is an Important Factor in Sentencing

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child sexual abuse material] by imposing

11

severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child sexual abuse material if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child sexual abuse material and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing.")).

In fact, the Sixth Circuit has reversed a district court that failed to see any importance in general deterrence.  *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012).  The district court stated "general deterrence ... will have little [if] anything to do with this particular case." *Id.*  The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child sexual abuse material context[.]" *Id.*  (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

The Court is in a position to send a clear message to the community that those who collect child sexual abuse material will pay a very heavy price. The goal of deterrence is realized if even one person is deterred. A sentence within the applicable guideline range will accomplish this goal.   A sentence well below the bottom of the Guideline range most definitely will not.

                **b.**       **The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

This is the factor involving the incapacitation or specific deterrence of the defendant that the Court is to consider.  *See Irey*, 612 F.3d at 1210.  Since Ryzinski has a variety of serious, long standing problems it is easy to conclude that he will have a difficult time overcoming his demonstrated sexual interest in young children.  As a result, the Court should impose a

significant guideline range jail sentence and a considerable term of supervised release to ensure that the danger to the community posed by Ryzinski is minimized as much as possible.

### 6. The Need to Avoid Unwarranted Sentencing Disparities

In *Goff, supra*, the district court sentenced a child sexual abuse material defendant to four months imprisonment despite an applicable guideline range of 37 to 46 months. The Third Circuit vacated the sentence and remanded for resentencing, holding that such a lenient sentence was unreasonable. *Goff*, 501 F.3d at 262. The court opined that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of § 3553 factors. Specifically, the district court did not adequately consider the nature and circumstances of the offense, the need to promote respect for the law, the avoidance of unwarranted sentencing disparities and affording adequate deterrence. *Id*. at 258. Goff downplayed the seriousness of the offense by implying that he committed a victimless crime driven by his curiosity. The Third Circuit emphatically rejected these claims. *Id*. at 258-59.

Goff also argued that he was entitled to a variance because he had never acted out in a sexual way with children. The Third Circuit vehemently disagreed with this argument, reasoning:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's sexual abuse material crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

*Id*. The Third Circuit was also thoroughly unpersuaded that Goff's supposedly exemplary life and charitable activities justified such a low sentence. The sentencing court's reliance on Goff's lack of a criminal history was also criticized because many child sexual abuse material offenders

are first time offenders. *Id*. at 260-61. The Third Circuit also noted disapprovingly that the district court had failed entirely to consider deterrence when arriving at such a drastically low sentence for Goff. *Id*.

Similarly, the defendant in *United States v. Lychock*, 578 F.3d 214 (3d Cir. 2009), was sentenced to five years of probation and a $10,000 fine despite his guideline range of 30 to 37 months. The government appealed the sentence arguing that it was substantively unreasonable. The Third Circuit agreed and vacated the excessively lenient sentence. *Id*. at 221. Lychock argued that his sentence should have been affirmed because of his age (37), acceptance of responsibility and lack of criminal record. The Third Circuit was not convinced reasoning that none of these factors justified such a drastic deviation from the guideline range. *Id*.

The Third Circuit has also overturned, as excessively lenient and thus substantively unreasonable, a sentence of five years of probation to begin with six months home confinement, along with a $2,500 fine, for a defendant with child sexual abuse material in *United States v. Hayes*, 383 F. App'x. 204 (3d Cir. 2010). Hayes' guideline range was 51 to 63 months. The sentencing court focused on Hayes' lack of a criminal history and supposed low risk of reoffending. His post arrest psychological treatment and family support were also significant factors in the far below guideline sentence. The district court also focused on the fact that Hayes had not actually sexually assaulted a child. *Id*. at 205-06. The Third Circuit found that none of these reasons justified such an excessively lenient sentence. *Id*. at 208. As a result, the Third Circuit vacated the sentence as substantively unreasonable, and the case was remanded for resentencing. *Id*.

### F. Conclusion

Ryzinski possessed tens of thousands of items of child sexual abuse material. His illegal stockpile depicted young children being raped and sexually humiliated. The costs of his unwavering, years long decision to receive and possess child sexual abuse material pale in comparison to the horrible toll suffered by the child victims whose abuse enthralled Ryzinski. He deserves a sentence well within his applicable Guideline range.

Respectfully submitted,

STEPHEN R. KAUFMAN
Acting United States Attorney

*s/Christian A. Trabold*
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013